UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DANIEL HUTCHINS,

        Plaintiff,

v.

RACHEL BROWN et al.,

        Defendants.
_____/

Case No. 2:25-cv-64

Hon. Hala Y. Jarbou

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the following claims: any claims based on harm to Prisoner Nelson, any First Amendment retaliation claims premised upon Plaintiff's actions in assisting Prisoner Nelson in filing a lawsuit or grievance, First Amendment claims for interference with Plaintiff's access to the courts, Fourteenth Amendment claims, and Eighth Amendment claims. Plaintiff's First Amendment retaliation claims against Defendants Brown, Johnson, Schroeder, Nebel, and Osterman premised upon Plaintiff's grievances and

lawsuits on his own behalf and supplemental state-law claim for "defamation of character by libel" against Defendant Brown remains in the case.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP staff: Nurse Rachel Brown, Prison Counselor Erik Johnson, Warden Sara Schroeder, Prison Counselor R. Nebel, and Resident Unit Manager Unknown Osterman.

Plaintiff alleges that, while incarcerated at MBP from October 9, 2024, to January 10, 2025,[1] Plaintiff lodged oral and written grievances, engaged in litigation against the MDOC, and assisted other prisoners in filing grievances and lawsuits. (Compl., ECF No. 1, PageID.3.) On or about November 8, 2024, Plaintiff requested that Defendant Johnson notarize Plaintiff's complaint against MDOC staff. (*Id.*) Reading the complaint, Defendant Johnson told Plaintiff, "Just making sure its not against Marquette. You should really consider not filing this before you get yourself into trouble." (*Id.*)

On or about November 21, 2024, Plaintiff handed Defendant Johnson the new civil rights complaint, requesting that Defendant Jonhson mail it. (*Id.*) When Defendant Johnson began to read Plaintiff's complaint, Plaintiff asked Defendant Johnson not to do so. (*Id.*) Defendant Johnson told Plaintiff. "I don't give a rats a** what you asked me. Go cry about it to the Warden like you usually

---

[1] In the complaint, Plaintiff states that he was incarcerated at MBP from October 9, 2024, to January 10, 2024. (Compl., ECF No. 1, PageID.3.) However, Plaintiff's reference to January 10, 2024, appears to be a typographical error.

2

do." (*Id.* (asterisks added).) Plaintiff told Defendant Johnson that he would be filing a grievance against Defendant Johnson. (*Id.*) That same day, Plaintiff received a notice that his legal mail from another prisoner, consisting of a letter and an affidavit signed by non-party prisoner Jason Norton, had been rejected by MBP staff. (*Id.*, PageID.4; ECF No. 1-1, PageID.11.)

The following day, Defendants Johnson and Nebel conducted a hearing regarding the rejection of Plaintiff's mail from Prisoner Norton. (ECF No. 1, PageID.4.) Defendant Nebel told Plaintiff that prisoners were not permitted to write to each other. (*Id.*) Plaintiff responded that Prisoner Norton is a witness in Plaintiff's litigation and that he and Norton have an approved prisoner-to-prisoner mail agreement. (*Id.*) Defendant Johnson replied, "You might get the letter, but you'll never get the affidavit." (*Id.*) When Plaintiff told Defendants Nebel and Johnson that the letter and the affidavit were "material evidence," Defendant Johnson stated, "You think you[ are] some kind of f***ing lawyer. You will learn your place here at Marquette real soon." (*Id.* (asterisks added).) Defendant Nebel added, "Legal beagles usually end up in the hole here." (*Id.*) Ultimately, however, Defendant Nebel determined that Plaintiff was entitled to receive legal mail from another prisoner provided that it was relevant to his case and ordered that "[t]he rejected mail in question will be approved and will be searched and delivered to [Plaintiff]." (ECF No. 1-2, PageID.12.) Plaintiff filed a grievance regarding the foregoing events and claims that the affidavit that he had intended to send to Prisoner Norton was never returned. (ECF No. 1, PageID.4.)

On or about November 25, 2024, non-party Prisoner Dylan Nelson asked Defendant Johnson to mail a civil rights complaint that Plaintiff had assisted Prison Nelson in preparing. (*Id.*) Defendant Johnson stated, "I see that you and Hutchins are still up to your bullshit. This could really hurt you." (*Id.*)

3

That same day, Plaintiff spoke with Defendants Nebel and Brown. (*Id.*, PageID.5.) Defendant Nebel stated, "Johnson says you helped Nelson file a lawsuit," and Defendant Brown added, "Oh yeah, who are you suing?" (*Id.*) Plaintiff refused to discuss the lawsuit with Defendants Nebel and Brown. (*Id.*) Defendant Brown responded by saying, "We got us a bona fide legal guy here. I wonder if he knows how we handle those guys here." (*Id.*) When Plaintiff stated that he would "figure it out through the grievance process," Defendant Brown replied, "Go ahead. I'll see you in seg." (*Id.*)

On or about December 2, 2024, Plaintiff accompanied Prisoner Nelson to a medical appointment with Defendant Brown. (*Id.*) Defendant Brown told Plaintiff he was not permitted to attend Prisoner Nelson's appointment and stated, "So we are clear, Erik Johnson is my friend. You f*** with him and you f*** with me. Only I play dirtier than you do." (*Id.* (asterisks added).) Plaintiff told Defendant Brown that he would be filing a grievance against her. (*Id.*)

On or about December 3, 2024, Plaintiff called his brother and reported Defendant Brown's behavior the previous day. (*Id.*) Plaintiff also complained that Defendant Brown was not providing Prisoner Nelson with proper treatment. (*Id.*) Plaintiff's brother then called the "MBP Warden's Office" to complain about Defendant Brown. (*Id.*) Later that day, Plaintiff and Prisoner Nelson were sent to temporary administrative segregation because Defendant Brown had issued class I misconducts for "threatening behavior" against them. (*Id.*; ECF No. 1-3, PageID.13.)

From December 3, 2024, to December 17, 2024, Plaintiff and Prisoner Nelson were held in administrative segregation without a hearing. (ECF No. 1, PageID.5.) While there, they were not permitted any out-of-cell activity. (*Id.*) Plaintiff was also left without soap, toothpaste, deodorant, and razors. (*Id.*, PageID.7.)

4

On or about December 4, 2024, Plaintiff asked Defendant Johnson for Plaintiff's "legal materials." (*Id.*, PageID.6.) Defendant Johnson responded, "The RUM and the Warden and I all agreed that you don't need any property right now. You'd only use it to file grievances anyway." (*Id.*) Defendant Osterman added that neither Plaintiff nor Prisoner Nelson would be getting any legal property, "including [Plaintiff's] affidavit." (*Id.*)

On or about December 13, 2024, Plaintiff told Defendant Johnson that the deadline for holding a hearing on the class I misconduct had passed. (*Id.*) Defendant Jonhson indicated that he knew and that "Osterman, Brown, the Warden, and [Defendant Johnson]" agreed that Plaintiff and Prison Nelson needed to stay in segregation and could "[w]rite [their] grievances from seg." (*Id.*)

Also on December 13, 2024, Plaintiff spoke to Defendant Schroeder who, as Warden, has the "sole authority to 'pull' misconduct reports prior to hearings pursuant to MDOC policy." (*Id.*, PageID.7.) Defendant Schroeder indicated that she was aware that the time for holding a hearing on Plaintiff's class I misconduct had expired, but stated, "I authorized you to be placed in seg. Your brother made a big fuss about Brown to my assistant. Johnson says both of you file lawsuits all the time. You can just sit there and think about your behavior." (*Id.*)

On or about December 17, 2024, Defendant Osterman released Plaintiff and Prisoner Nelson from segregation, telling them, "No more phone calls crying to your brother. No more grievances. Got it?" (*Id.*)

As a result of the events described in Plaintiff's complaint, Plaintiff brings claims under § 1983 for violation of his First and Fourteenth Amendment rights and Michigan state law. (*Id.*, PageID.8.) The Court will also liberally construe Plaintiff's complaint as raising an Eighth Amendment claim for unconstitutional conditions of confinement. Plaintiff seeks monetary relief. (*Id.*, PageID.9.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Claims Based on Harm to Prisoner Nelson

As a preliminary matter, Plaintiff's complaint references adverse actions taken against non-party Prisoner Nelson. To the extent that Plaintiff seeks to bring claims based upon these harms or on behalf of Prisoner Nelson, Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris,* 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that § 1654 preserves a party's right to proceed *pro se*, but only with respect to the party's own claims. *See Shepherd v. Wellman,* 313 F.3d 963, 970 (6th Cir. 2003) (holding that a *pro se* party may not prosecute a representative wrongful death action brought under section 1983, where the beneficiaries thereof included persons other than himself). Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land,* 416 F.2d 1244, 1245 (6th Cir. 1969).

Consequently, Plaintiff lacks standing to raise any claims based upon harm to Prisoner Nelson and the Court will dismiss any such claims.

### B.  First Amendment Retaliation Claims

Plaintiff alleges that Defendants retaliated against Plaintiff in violation of Plaintiff's First Amendment rights. (ECF No. 1, PageID.8.) Retaliation based upon a prisoner's exercise of his or

her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.     Protected Conduct

Plaintiff alleges that, from October 9, 2024, to January 10, 2025, Plaintiff lodged oral and written grievances, engaged in litigation against the MDOC, and assisted other prisoners in filing grievances and lawsuits. (ECF No. 1, PageID.3.) He specifically references making oral and written grievances on November 8, 2024, November 21, 2024, November 22, 2024, and December 3, 2024. He also contends that he helped Prisoner Nelson file a lawsuit and make complaints against Defendant Brown for improper medical treatment.

It is well-established that an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Therefore, at this stage of the proceedings, the Court finds that Plaintiff engaged in First Amendment protected conduct when Plaintiff filed grievances and lawsuits on his own behalf.

However, "[w]hile a prisoner has a First Amendment right to file grievances against prison officials on his own behalf, 'an inmate does not have an independent right to help other prisoners with their legal claims.'" *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005) (quoting *Thaddeus–X,* 175 F.3d at 395). Therefore, assisting another prisoner in filing a lawsuit is not protected activity within the meaning of the First Amendment unless the plaintiff alleges sufficient facts that would plausibly suggest that "his assistance is *necessary* to provide another inmate with constitutionally-protected access to the courts." *Id.*. (emphasis in original).

Here, Plaintiff has not alleged any facts from which this Court could infer that Plaintiff's assistance was necessary to ensure Prisoner Nelson's access to the courts. Therefore, any First Amendment retaliation claim premised upon Plaintiff's actions in assisting Prisoner Nelson in filing a lawsuit or grievance will be dismissed. *See Hermansen v. Ky. Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (affirming the dismissal of the plaintiff's retaliation claim for failure to state a claim where the plaintiff complaint alleged that he was assisting another inmate in filing a grievance at the time of this transfer but the plaintiff failed to adequately allege that the other inmate was "incapable of pursing his own grievance and had no other source of help").

### 2.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

9

Taking Plaintiff's allegations concerning Defendants' comments and actions as true as is required at this stage, the Court finds that Plaintiff has alleged sufficient facts to satisfy the second and third elements of his retaliation claims. Accordingly, Plaintiff's First Amendment retaliation claims against Defendants cannot be dismissed on screening.

### C.    First Amendment Access to the Courts Claims

Plaintiff claims that Defendants, in depriving Plaintiff of his legal property, interfered with Plaintiff's First Amendment right of access to the courts. (ECF No. 1, PageID.1, PageID.8.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378,

10

391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff contends that Defendants refused to allow Plaintiff to obtain an affidavit from Prisoner Norton (ECF No. 1, PageID.4), and that Plaintiff was later denied his "legal materials" while in segregation (*id.*, PageID.6). Plaintiff mentions that the affidavit concerned a civil lawsuit against MDOC staff, but he does not describe the nature of the "legal materials" needed while in segregation. Either way, Plaintiff fails to provide the Court with any facts that would plausibly suggest that the actions of Defendants hindered Plaintiff's ability to pursue non-frivolous claims in a direct appeal, civil rights claim, or habeas corpus action.

In alleging in a conclusory manner than Plaintiff was denied access to the courts, Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79. Accordingly, the Court will dismiss Plaintiff's First Amendment claim for interference with Plaintiff's access to the courts.

### D.  Fourteenth Amendment Due Process Claims

Plaintiff alleges that Defendants violated Plaintiff's Fourteenth Amendment right to due process. (ECF No. 1, PageID.8.) The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

#### 1.  Placement in Segregation

Plaintiff alleges that he was sent to segregation for two weeks in connection with a false misconduct report. (ECF No. 1, PageID.8.) The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

First, Plaintiff does not specify whether he was found guilty of the class I misconduct of threatening behavior. To the extent that the misconduct charge was dismissed, there is "no

constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed"). Plaintiff may not bring a due process claim if he was ultimately found not guilty of the falsified misconduct.

However, regardless of the finding, the allegations of Plaintiff's complaint reveal that Plaintiff's misconduct charge did not affect any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's

---

[2] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/ otis2profile.aspx? mdocNumber=438751 (last visited Apr. 21, 2025).

13

sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff alleges that he was placed in segregation for two weeks because of the falsified misconduct report. (ECF No. 1, PageID.6.) Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation

14

implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff received two weeks in segregation as a result of the falsified misconduct report. By the terms of *Sandin* itself, the deprivations suffered by Plaintiff were neither atypical nor significant. Plaintiff's allegations therefore fail to implicate a liberty interest. Plaintiff's due process claims concerning the falsified misconduct report and stay in segregation will be dismissed.

### 2. Deprivation of Legal Property

Plaintiff alleges that his affidavit was never returned to him. Though Plaintiff does not invoke the protection of the Fourteenth Amendment for this deprivation, the facts Plaintiff has alleged might be construed as an attempt to assert a Fourteenth Amendment due process claim premised upon the deprivation of this property. However, Plaintiff's due process claims regarding the deprivation of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a

prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his legal property. Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his legal property.

### E.     Eighth Amendment Conditions of Confinement Claims

Plaintiff alleges that, while in segregation, Plaintiff did not have access to soap, toothpaste, deodorant, razors, and out of cell activity. (ECF No. 1, PageID.7.) The Court liberally construes this allegation to include an Eighth Amendment claim for unconstitutional conditions of confinement.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

16

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Here, Plaintiff's claim fails because the facts, as alleged, do not satisfy the initial objective prong. Plaintiff alleges that he was deprived of hygiene items for two weeks but does not allege that he suffered any physical injury as a result of the deprivations. Courts have held that the denial of these items for similar periods of time constituted only temporary inconveniences that do not

17

rise to the level of an Eighth Amendment violation. *See, e.g.*, *Matthews v. Murphy*, No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (concluding that the denial of a toothbrush and toothpaste for 35 days constituted a mere temporary inconvenience); *Robertson v. McRay*, No. 03-22823-CIV, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (finding that the failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment). Moreover, Plaintiff does not allege any physical injury as a result of the alleged deprivations. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (holding that a 49-day denial of a comb, deodorant, and cleaning supplies, none of which jeopardized the prisoner-plaintiff's health, failed to satisfy the objective component of an Eighth Amendment claim); *Holder v. Merline*, No. Civ.A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (concluding that a three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted). Accordingly, Plaintiff fails to state an Eighth Amendment conditions of confinement claim against Defendants based upon the deprivation of hygiene items.

The same is true of Plaintiff's claim that he was denied out of cell activity while in segregation. As discussed above, courts have held that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). And, the Sixth Circuit has

held that without a showing that basic human needs were not met, the denial of privileges such as out of cell activity that result from administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Therefore, Plaintiff's claim that he was denied out of cell activity for two weeks does not state an Eighth Amendment claim.

For each of the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment claims.

F.    **State Law Claims**

Plaintiff also claims that Defendant Brown violated Plaintiff's rights under Michigan state law. (ECF No. 1, PageID.8.) As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. Therefore, any assertion that Defendant Brown violated state law or committed state-law torts fails to state a claim under § 1983.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because Plaintiff continues to have a pending federal claim against Defendant Brown, the Court will exercise supplemental jurisdiction over Plaintiff's state-law claim for "defamation of character by libel" against Defendant Brown.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): any claims based on harm to Prisoner Nelson, any First Amendment retaliation claims premised upon Plaintiff's actions in assisting Prisoner Nelson in filing a lawsuit or grievance, First Amendment claims for interference with Plaintiff's access to the courts, Fourteenth Amendment claims, and Eighth Amendment claims. Plaintiff's First Amendment retaliation claims against Defendants Brown, Johnson, Schroeder, Nebel, and Osterman premised upon Plaintiff's grievances and lawsuits on his own behalf and supplemental state-law claim for "defamation of character by libel" against Defendant Brown remains in the case.

An order consistent with this Opinion will be entered.

Dated: May 19, 2025                                   /s/ Hala Y. Jarbou
                                                      HALA Y. JARBOU
                                                      CHIEF UNITED STATES DISTRICT JUDGE